UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| MOHAMMAD JELANI and AISHA YOUSOFZAI,<br>    Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION and U.S. DEPARTMENT OF HOMELAND SECURITY,<br>    Defendants. | C.A. No. 24-cv-532-JJM-PAS |

## ORDER

Defendants, the Federal Bureau of Investigation ("FBI") and the U.S. Department of Homeland Security ("DHS"), move to dismiss the Complaint that Plaintiffs Mohammad Jelani and Aisha Yousofzai brought against them. ECF No. 8. The Court sets forth below its reasons for DENYING the Motion to Dismiss.

## I. BACKGROUND

Plaintiffs Mohammad Jelani and Aisha Yousofzai ("Plaintiffs") are natives and citizens of Afghanistan who reside in Rhode Island. ECF No. 1 at ¶ 9. Plaintiffs came to the U.S. on September 1, 2021, following the withdrawal of U.S. forces from Afghanistan. *Id.* Mr. Jelani worked for Jelani Construction group, a company that cooperated with the American military. *Id.* He and his wife purportedly left Afghanistan due to the risk of harm and persecution by the Taliban. *Id.*

On September 30, 2021, the federal government enacted the Extending Government Funding and Delivering Emergency Assistance Act ("the Act").

Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. No. 117-43, 135 Stat. 344 (2021). Relevant here, Section 2502(a) of the Act addresses Operation Allies Welcome Parolees ("OAW Parolees"), Afghan nationals paroled into the U.S. between July 31, 2021, and September 30, 2022, and certain of their family members paroled into the U.S. after September 30, 2022. § 2502(a). Section 2502(a) makes OAW Parolees, such as Plaintiffs, eligible for specific immigration-related benefits, including expeditious adjudication of their asylum claims. § 2502(a). Section 2502(c) states that: "the Secretary of Homeland Security shall . . . in the absence of exceptional circumstances, issue a final administrative adjudication on the asylum application within 150 days after the date the application is filed." § 2502(c).

Plaintiffs filed an affirmative I-589 Application for Asylum and Withholding of Removal on November 22, 2021. ECF No. 1 at ¶ 9. Plaintiffs appeared for their first in-person interview regarding their asylum application at the Boston Asylum Office on January 18, 2022, and attended a second interview on June 9, 2022. *Id.* at ¶ 12.

Between August 2, 2022, and August 4, 2024, Plaintiffs made "numerous" inquiries as to the status of their asylum application with the Boston Asylum Office. *Id.* at ¶ 14. In response, designated American Immigration Lawyers Association ("AILA") attorney liaisons and the supervisor of the Boston Asylum Office informed Plaintiffs that their case was "still undergoing security checks." *Id.* In one emailed response to Plaintiffs' counsel, an AILA attorney liaison reported that: "[t]he case remains pending security checks. As you likely know, when that's the status, there's little the AO [asylum officer] (or us liaisons) can do to move things along." ECF

2

No. 11-9 at 3. In total, Plaintiffs received notice that their application was "pending security checks" four times between August 2, 2022, and August 4, 2024. ECF No. 11-9.

On April 19, 2023, seven plaintiffs in the Northern District of California brought a putative class action case, *Ahmed v. DHS* ("*Ahmed*"), against U.S. Citizenship and Immigration Services ("USCIS"), DHS, and their officers, based on the alleged failure to timely adjudicate OAW Parolees' applications for asylum. ECF No. 8-2 at ¶ 7. Later, the plaintiffs moved for class certification and a class-wide preliminary injunction. ECF No. 8 at 10. The defendants moved to dismiss. *Id.*

On September 6, 2023, the *Ahmed* parties signed a Settlement Agreement, which imposed timing and percentage benchmarks to adjudicate Class Member asylum applications with quarterly deadlines and monthly status-reporting requirements ("Settlement Agreement"). *Id.* In the Settlement Agreement, plaintiffs agreed to "settle the claims alleged in the complaint and to voluntarily dismiss the litigation with prejudice." ECF No. 8-4 at 2.

A day later, the plaintiffs filed an Unopposed Motion Re: Approval of Class Action Settlement, stating, among other points, that "notice to members of the settlement class is not required in this case… [and is] only necessary where class members would be 'bound' by the terms of the settlement… Individual Class Members do not waive any rights or release any other claims through this Settlement." ECF No. 8-8 at 7-8. Several days later, the *Ahmed* court issued an order approving the class action settlement, which certified a putative class for settlement

3

purposes only consisting of "all individuals identified under Section 2502(a)(1)(A) of [the Act] . . ., who have filed or will file an application for asylum." ECF No. 8-5 at 2. It is not disputed in this case that the Plaintiffs are members of the class certified in *Ahmed*. ECF No. 11 at 1.

Now, Plaintiffs bring forth this suit, alleging unreasonable delay in the adjudication of their asylum application and requesting relief under the Mandamus Act (28 U.S.C. § 1361), the Declaratory Judgment Act (28 U.S.C. § 2201), and the Administrative Procedure Act (5 U.S.C § 702). ECF No. 1 at ¶ 1.

In response, Defendants move to dismiss this action under the doctrine of collateral estoppel, stating that Plaintiffs' claims were previously litigated in *Ahmed*. ECF No. 8 at 1. Defendants also seek to dismiss the FBI as a party to the suit, asserting that Plaintiffs lack standing to bring claims against the FBI under Federal Rule of Civil Procedure 12(b)(1). ECF No. 8 at 8.

## II. STANDARD OF REVIEW

### A. 12(b)(1)

A federal court's jurisdiction is limited to resolving "cases" or "controversies" under Article III of the Constitution. *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). To establish standing: (1) the plaintiff must have suffered an "injury in fact" invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be "likely," rather than merely "speculative," that the injury will be redressed by a favorable decision. *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff bears the burden of establishing standing by a preponderance of the evidence. *Id.* at 561.

In considering a motion to dismiss for lack of standing, a court assesses whether a party has pleaded a "plausible" claim of standing. WRIGHT & MILLER, 33 *supra* § 8333. To decide, a court must accept well-pleaded factual allegations as true, but it should not assume the truth of bare legal conclusions. *Id.* As stated by Justice Scalia in *Lujan*, ". . . on a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

### B. Collateral Estoppel

The purpose of collateral estoppel doctrine, also known as issue preclusion, is to prevent successive litigation of an issue of fact or law that has been litigated and resolved by a valid court determination essential to a prior judgment, even if the issue recurs in the context of a different claim. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Unlike claim preclusion, which prevents subsequent litigation of all claims that were or could have been previously litigated between two parties, collateral estoppel only blocks the litigation of questions actually and necessarily decided in a prior suit. *See id.* For collateral estoppel to apply, the issue sought to be precluded must: (1) be the same as that involved in the prior action, (2) have actually been litigated, (3) have been determined by a valid and binding judgment, and (4) have been essential to the judgment. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994).

## III. DISCUSSION

First, the Court will review whether Plaintiffs have standing to bring their claims against the Defendants. Once that is resolved, the Court will review whether Plaintiffs' claims are collaterally estopped from being heard in this court.

### A. 12(b)(1)

Defendants argue that the Court should dismiss the FBI from this case on grounds that Plaintiffs have not alleged sufficient facts to establish a causal connection between the conduct of the FBI and their injury.[1] ECF No. 8 at 8. In support, Defendants argue that the FBI does not have a statutory role in the adjudication of asylum applications under Section 2502 of the Act. *Id.*

#### 1. Injury in fact

To survive a motion to dismiss for lack of standing, a plaintiff must allege an "injury in fact" invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). An injury is concrete only if it "actually exist[s]." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). In assessing the concreteness of alleged intangible harms, courts consider the judgment of Congress and whether the harm "has a close relationship to a harm that has traditionally been regarded as providing

---

[1] Defendants do not challenge whether Plaintiffs suffered an "injury in fact" invasion of a legally protected interest or whether it is "likely," rather than merely "speculative," that the injury will be redressed by a favorable decision. ECF No. 8 at 23-24. That said, the Court will undertake a full analysis of Plaintiffs' standing to sue both defendants.

6

a basis for a lawsuit in English or American courts." *Spokeo,* 578 U.S. at 340-41. Additionally, the plaintiff must have been affected "in a personal and individual way" by the injurious conduct. *Hochendoner*, 823 F.3d at 731 (quoting *Spokeo,* 578 U.S. at 330-31). What is more, the injury cannot be "conjectural" or "hypothetical." *Spokeo,* 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). A "bare procedural violation" by a defendant does not satisfy the injury in fact requirement. *See id*. at 341.

Here, Plaintiffs allege that Defendants' failure to adjudicate their asylum application has caused and continues to cause them (1) mental anguish and stress, (2) difficulties in obtaining secure employment, and (3) an inability to obtain refugee travel documents to visit family abroad. ECF No. 1 at ¶ ¶ 8, 16. While these alleged injuries are intangible, they are real impediments to maintaining a normal and productive life in the United States. Emotional distress and challenges finding work resemble injuries that commonly form the basis of tort claims, such as defamation. *See Spokeo,* 578 U.S. at 340-41; *see, e.g.*, *Sindi v. El-Moslimany*, 896 F.3d 1, 20 (1st Cir. 2018). Accordingly, Plaintiffs allege more than a "bare procedural violation" by Defendants and, for the purposes of pleading, establish an injury that "actually exist[s]." *See Hochendoner*, 823 F.3d at 731; *Spokeo,* 578 U.S. at 341.

Additionally, by referring to their own, personal injuries in the Complaint, Plaintiffs claim that the delay has injured the couple specifically, not merely foreign nationals without permanent resident status generally. *See Sultaliev v. Rodrigeuz*, 263 F. Supp. 3d 352, 356 (D. Mass. 2017) (finding conditional permanent resident

7

plaintiffs did not have standing to sue USCIS for alleged failure to process petitions because plaintiffs alleged foreign nationals generally suffer from harms such as denial of employment without alleging that they had suffered such harms). What is more, Plaintiffs allege that Defendants' actions "have caused and continue to cause" Plaintiffs harm. Accordingly, Plaintiffs claim injuries that are neither "conjectural" nor "hypothetical." ECF No. 1 at ¶ 8; *see Spokeo,* 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). Thus, Plaintiffs have alleged sufficient facts to establish an injury in fact invasion of a legally protected interest.

### 2. Causal connection

Defendants claim that Plaintiffs have not sufficiently proven the alleged causal connection between their injuries and the FBI's conduct because Defendants assert that (1) Plaintiffs have failed to plausibly allege that the FBI is involved with the adjudication of their asylum application, and (2) the FBI does not have a statutory role under § 2502 of the Act. ECF No. 8 at 23-24. For Plaintiffs to establish a sufficient causal connection, their claimed injuries must be fairly traceable to the challenged action of the Defendants. *Lujan*, 504 U.S. at 560-61.

Here, Defendants claim that "there are no allegations whatsoever that this step in the asylum application process has contributed in any manner to the delay in the adjudication of Plaintiff's application." ECF No. 8 at 24. On the contrary, Plaintiffs state in their Complaint that "[t]he Federal Bureau of Investigation is named as a Defendant upon information and belief that the delay in this case may be attributed to a failure to process a security check." ECF No. 1 at ¶ 11.

Plaintiffs also allege that they have "made numerous inquiries as to the status of [their] asylum application . . . In response to these queries, the Supervisor of the Boston Asylum Office informed the [AILA] attorney liaisons that the case was still undergoing security checks." ECF No. 1 at ¶ 14. What is more, Plaintiffs' evidence shows that, in response to emailed inquiries regarding the status of Plaintiffs' application, an ALIA attorney liaison to the regional USCIS office reported that: "[t]he case remains pending security checks. As you likely know, when that's the status, there's little the AO [asylum officer] (or us liaisons) can do to move things along." ECF No. 11-9 at 3. Cumulatively, Plaintiffs received notice that their application was "pending security checks" four times between August 2, 2022, and August 4, 2024. ECF No. 11-9.

True, § 2502 does not task the FBI with a statutory role in the adjudication of asylum applications. Even so, a publicly available USCIS' webpage regarding Affirmative Asylum Eligibility states that: "[e]very individual who applies for asylum will be subject to a series of background and security checks…. [S]ecurity checks consist of: FBI check on your biographical information and fingerprints…" USCIS, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-frequently-asked-questions/questions-and-answers-affirmative-asylum-eligibility-and-applications (last visited July 30, 2025). Accordingly, Plaintiffs' claimed injuries are fairly traceable to the conduct of the FBI. *See Lujan*, 504 U.S. at 560-61.

9

With respect to DHS, Plaintiffs state that "the DHS oversees the [USCIS], the sub-agency in charge of adjudicating affirmative asylum applications, such as Mr. Jelani." ECF No. 1 at ¶ 10. Given that Plaintiffs allege injuries related to an unreasonable delay in the adjudication of their application for asylum, it makes sense that their claimed injuries would be fairly traceable to the conduct of the agency overseeing the asylum adjudication process. *See Lujan*, 504 U.S. at 560-61. Plaintiffs have thus alleged sufficient facts to establish a plausible causal connection between the conduct of DHS and the FBI, and Plaintiffs' alleged injuries.

### 3. Redressability

Finally, to establish standing, Plaintiffs must show that it is "likely" rather than merely "speculative" that a favorable judicial decision will redress their claimed injuries. *Lujan*, 504 U.S. at 561. Here, Plaintiffs allege that Defendants caused their injuries "unlawfully withholding or unreasonably delaying action on Plaintiffs' asylum application…" ECF No. 1 at ¶ 17. Plaintiffs seek a mandate that "the Defendants process Plaintiffs' security checks and adjudicate Plaintiffs' asylum application…" ECF No. 1 at 7. Accordingly, it is likely rather than speculative that a favorable judicial decision would redress Plaintiffs' claimed injuries by resulting in a decision regarding their asylum application. *See Lujan*, 504 U.S. at 561.

Thus, Plaintiffs have established standing to bring claims against both Defendants here.

### B. Collateral Estoppel

Defendants argue that collateral estoppel bars Plaintiffs from litigating the issue of delay in the processing of their OAW asylum application because they are mandatory Class Members of the *Ahmed* certified class. ECF No. 8 at 1.

#### 1. The issue sought to be precluded must be the same as that involved in the prior action

Defendants state that Plaintiffs' claims are "indistinguishable from those presented in *Ahmed*," noting that "both lawsuits contain allegations regarding the purported untimely adjudication of asylum applications filed by individual OAW parolees under Section 2502." ECF No. 8 at 14.

For an issue to be precluded, it must be the same as that involved in the prior action. WRIGHT & MILLER, 18 *supra* § 4416. Although the facts need not be identical between the two cases, collateral estoppel is appropriate only if any factual differences "are of no legal significance whatever." *Id.* at § 4425.

The central issue in *Ahmed* was the issue of delay in the adjudication of Class Members' OAW asylum applications, as stated in the plaintiffs' complaint: "there are questions of law and fact common to the proposed Class, including: . . . whether Defendants have unreasonably delayed in adjudicating asylum applications for failure to comply with the 150-day statutory timeframe." ECF No. 8-2at ¶ 72. Similarly, Plaintiffs' Complaint states: "The Defendants… are unlawfully withholding or unreasonably delaying action on Plaintiffs' asylum application and have failed to carry out the adjudicative functions delegated to them by law…." ECF

11

No. 1 at ¶ 17. Accordingly, the central issue raised in *Ahmed* is the same as the issue of delay in the adjudication of OAW asylum applications raised in this case.

### 2. The issue must have been actually litigated

Defendants claim that the issue of alleged delay in OAW asylum applications was "thoroughly litigated in the proceedings before the *Ahmed* court…" because the parties in *Ahmed* (1) submitted substantial briefing in the case, and (2) signed the Settlement Agreement, which Defendants claim reflects the intent to preclude further litigation of the issue. ECF No. 8 at 16, 18.

For an issue to be precluded, it must have been actually litigated in a prior action. According to the Restatement (Second) of Judgments:

> [w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section…. In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.

Restatement (Second) of Judgments § 27 (A.L.I. 1982). Generally, settlements and resulting consent judgments produce claim preclusion but not issue preclusion because the parties' claims are dismissed without resolving the substance of the issues presented. *See Arizona v. California*, 530 U.S. 392, 414 (2000); WRIGHT & MILLER, 18A *supra* § 4443 (3d ed. 2025). Since consent judgments generally mirror the intent of the settling parties, however, a consent judgment may preclude further litigation of an issue if the parties intend for their settlement agreement to have such an effect. *See Arizona*, 530 U.S. at 414; *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 (1st

Cir. 1999). "The scope of preclusion by settlement arises from contract," and we "measur[e] intent by ordinary contract principles." WRIGHT & MILLER, 18A *supra* § 4443. Additionally, "a stipulated dismissal with prejudice operates as an adjudication on the merits for claim-preclusion purposes, but ordinarily should not of itself count as the actual adjudication of any issue." *Id.* at § 4435; *see Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 n. 17 (1st Cir. 2005).

Here, *Ahmed* settled in the pleading stage, before the court could hold a hearing on the defendants' motion to dismiss. ECF No. 8 at 10. Accordingly, though the parties may have submitted substantial briefing on issues such as class certification, preliminary injunction, and dismissal, the *Ahmed* court did not have the chance to determine any substantive issues before settlement. *Id.*

After the parties signed the Settlement Agreement, the *Ahmed* court entered a corresponding consent judgment. ECF No. 8-5. Because the issue preclusive effect of a consent judgment hinges on the intent of the settling parties, as measured by ordinary contract principles, we look to the Settlement Agreement to determine whether the parties in *Ahmed* intended to preclude further litigation of the alleged delay in OAW asylum applications. *See* WRIGHT & MILLER, 18A *supra* § 4443; *Arizona*, 530 U.S. at 414; *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 (1st Cir. 1999). The Settlement Agreement states that "plaintiffs agree to settle all claims… and to dismiss with prejudice this litigation." ECF No. 8-4 at 2. It adds that the parties "request that the Court retain jurisdiction over the litigation, notwithstanding plaintiffs' voluntary dismissal of their claims." *Id.* While the plaintiffs' stipulated

13

dismissal with prejudice could trigger a finding of claim preclusion in proceeding against the same defendants named in *Ahmed*, it does not trigger promissory estoppel here. This is because it does not operate as an actual adjudication of the substantive issues. *See* WRIGHT & MILLER, 18A *supra* § 4435; *see Young v. City of Providence ex rel. Napolitano,* 404 F.3d 4, 25 n. 17 (1st Cir. 2005).

The Court looks to First Circuit precedent for further support. In *Nottingham Partners v. Trans-Lux Corp.*, the First Circuit determined that plaintiffs were collaterally estopped from relitigating issues in federal court related to a Rule 23(b)(2) class action case that settled in state court based on settlement language that "purported to release all claims, by whomsoever brought, that 'have been, could have been, or in the future might have been asserted' against Trans-Lux or its directors 'in connection with or that arise now or hereafter out of' any matters or transactions referred to in the complaint or the settlement documentation." *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31 (1st Cir. 1991). Unlike the settlement agreement in *Nottingham*, the Settlement Agreement here does not purport to "bar all future claims in connection with or that arise now or hereafter out of the matters raised" in the *Ahmed* plaintiffs' complaint. *See Nottingham Partners*, 925 F.2d 29, 31. Rather, the Settlement Agreement simply stipulates that the plaintiffs agree to dismiss their then-present claims with prejudice. ECF No. 8-4 at 2.

The language of the *Ahmed* plaintiffs' Unopposed Motion Re: Approval of Class Action Settlement lends further support to a finding of no intent to preclude further litigation of the issue of delay in the adjudication of OAW asylum applications. In

14

the motion, the *Ahmed* plaintiffs state that notice to Class Members is not required because "Individual Class Members do not waive any rights or release any other claims through this Settlement." ECF No. 8-8 at 8.  Accordingly, the Settlement Agreement does not sufficiently demonstrate an intent to bar future litigation on the issue of delay in the adjudication of OAW asylum applications.  Thus, the issue was not actually litigated.[2]

## IV. CONCLUSION

Plaintiffs have alleged sufficient facts to establish standing to sue both Defendants.  Additionally, the issue of adjudication of OAW asylum applications is not precluded by the consent judgment issued in *Ahmed* because the issue of delay in the adjudication of OAW asylum applications was not actually litigated.  Accordingly, the Court DENIES Defendants' Motion to Dismiss.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

---

John J. McConnell, Jr.
Chief Judge
United States District Court

August 1, 2025

---

[2] The Defendants also fail to satisfy the remaining elements of collateral estoppel.  Because the issue of delay in the adjudication of OAW asylum applications was not actually litigated in *Ahmed*, it could not have been determined by a valid and binding final judgment.  And, as explained above, the *Ahmed* consent judgment did not determine the issue of delay in the adjudication of OAW asylum applications.  Therefore, the issue could not have been essential to the judgment.